UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.M.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL,<br><br>　　　　　Defendant. | Case No.  20-cv-05304-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 26 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which awarded her disability benefits for the period beginning April 8, 2018 but denied benefits for the period April 1, 2016 to April 7, 2018. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 8, 18. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment (Dkt. 23) and **DENIES** Defendant Commissioner's cross-motion for summary judgment (Dkt. 26).

**I.    BACKGROUND**

On or about October 3, 2017, Plaintiff filed applications for Title II disability insurance benefits and Title VII supplemental security income. *See* Dkt. 21 (Administrative Record ("AR")) 249-254, AR 272-274. After a hearing, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was disabled beginning on April 8, 2018 but was not disabled prior to that date. AR 12-36 (the "ALJ Decision").

The ALJ concluded that since April 1, 2016 (the onset date claimed by Plaintiff), Plaintiff suffered from the following severe impairments: complex regional pain syndrome (CRPS) type 1, anxiety disorder, polycystic ovary syndrome (PCOS), and fibromyalgia. AR 18. The ALJ concluded that other impairments "described, or mentioned in passing" in the record, including insomnia, affective disorder, irritable bowel syndrome (IBS), and medical marijuana use, were not severe. AR 18-19. The ALJ found that prior to April 8, 2018, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations and would be absent once a month. AR 21. The ALJ found that beginning on April 8, 2018, Plaintiff had the RFC to perform

sedentary work with the same limitations except that she would be absent 3 times per month. AR 26-27.  The ALJ determined that Plaintiff had been unable to perform her past relevant work as an animal caretaker, housesitter, and home attendant since April 1, 2016.  AR 28-29.  The ALJ found that before April 8, 2018, there were other jobs that Plaintiff could perform.  AR 29-30.  However, he found that from that date on, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform.  AR 30-31.  Accordingly, the ALJ found that Plaintiff was disabled beginning on April 8, 2018, but she was not disabled before that date.  AR 31.

The issue in this case is whether Plaintiff is entitled to benefits for the period April 1, 2016 (the date Plaintiff claims her disability began) to April 7, 2018 (the day before the date the ALJ found her to be disabled).

Following the Appeals Council's denial of Plaintiff's request to review the ALJ Decision (AR 1-6), Plaintiff timely appealed the ALJ Decision to this Court.  Dkt. 1 (Complaint).

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. 23, 26), which are now ready for decision without oral argument.

**II.    ISSUES FOR REVIEW**

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ properly evaluate Plaintiff's credibility?
3. Did the ALJ properly evaluate the lay witness statements?
4. Did the ALJ properly evaluate Plaintiff's residual functional capacity and her ability to perform other work for the period prior to April 8, 2018?

**III.   STANDARD OF REVIEW**

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g).  Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial

evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

## IV.     DISCUSSION

### A.     Issue One:  Evaluation of Medical Evidence

#### 1.     Standard for evaluating medical evidence

As stated above, Plaintiff's applications for Social Security benefits were filed in October 2017. Thus, this case is subject to Social Security Administration regulations regarding the evaluation of medical opinions that went into effect on March 27, 2017, which include a change in how medical evidence must be evaluated. "The new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see*

3

*also* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716, at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion" that were required under the previous regulations, "the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions." *V.W.*, 2020 WL 1505716 at *14 (citation omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

### 2. Analysis

Plaintiff challenges the ALJ's weighing of medical evidence offered by Emily Cohen, M.D., Timothy Lo, M.D., and three mental health care providers. Dkt. 23 at 4-9.

#### a. Dr. Cohen

Dr. Cohen provided an opinion based on an evaluation of Plaintiff on April 4, 2018, just four days before the date the ALJ concluded Plaintiff became disabled. AR 25, 29; *see also* AR 1208-1215.[1] Dr. Cohen's assessment was based on her own examination of Plaintiff and her

---

[1] In his discussion of Dr. Cohen's opinion, the ALJ cites Exs. 1F and 12F. AR 25. These exhibits appear to be identical except that Ex. 1F states that Dr. Cohen examined Plaintiff on April 4, 2011,

4

review of Plaintiff's treatment records from Alta Bates Medical Center, Kaiser Permanente, and Pain and Rehabilitative Consultants Medical Group from 2012 to 2017. *See* AR 1209. She assessed that Plaintiff had certain functional limitations and that "[s]he will likely be absent from work more than three times per month due to her chronic pain." AR 1213-1214. Dr. Cohen's opinion regarding Plaintiff's absence from work is critical because at the hearing, the vocational expert testified that a hypothetical individual with similar exertional and other limitations who would be absent once a month could perform various jobs, but if the individual would be absent twice a month, it would preclude all work. AR 87-88.

The ALJ discussed Dr. Cohen's opinion in two sections of in his decision. In discussing Plaintiff's RFC for the period before April 8, 2018, the ALJ stated that Dr. Cohen's opinion was "persuasive, as it is consistent with the record for the reasons discussed regarding the state agency reviewing physicians and supported by Dr. Cohen's own exam of the claimant." AR 25. However, he also stated that "for these same reasons, the limitation to being absent from work more than 3 times per month is inconsistent with the record for this period." *Id.* The ALJ instead concluded in his RFC determination for the period before April 8, 2018 that Plaintiff would be absent once a month. AR 21.

The ALJ revisited Dr. Cohen's opinion in his evaluation of Plaintiff's RFC for the period beginning April 8, 2018. AR 27-28. He summarized Dr. Cohen's examination and findings. AR 27. He then stated that for this period he "finds Dr. Cohen's entire opinion persuasive … as it is supported by her own examination of the claimant on April 4, 2018, which is just prior to the established onset date, and it is consistent with the evidence in the record on or after April 8, 2018, including exams showing tenderness, some tremors, and some reduced grip strength." AR 28.

The ALJ thus selected April 8, 2018 as the date when Plaintiff's conditions became disabling. AR 26-27; *see also* AR 31 ("The claimant was not disabled prior to April 8, 2018, but

---

and Ex. 12F states that the examination took place on April 4, 2018. *Compare* AR 366 (from Ex. 1F), *with* AR 1209 (from Ex. 12F). Because Dr. Cohen's report discusses records and events after 2011, and because neither party has taken issue with the ALJ's statement that Dr. Cohen examined Plaintiff on April 4, 2018, the Court will consider Dr. Cohen's report at Ex. 12F (AR 1208-1215) as the operative report. *See* AR 43-44 (hearing transcript explaining date discrepancy in Ex. 1F).

5

became disabled on that date"). Comparing the ALJ's assessment of Plaintiff's RFC before and after this date, the critical change is the ALJ's conclusion that as of April 8, 2018, Plaintiff's condition would begin to cause her to be absent from work three days per month rather than just one day per month. *Compare* AR 21, *with* AR 26-27. Thus, the April 8, 2018 date is the turning point between when the ALJ gave only partial credit to Dr. Cohen's opinion and when he found her opinion fully persuasive.

Plaintiff argues that the ALJ's rejection of Dr. Cohen's opinion that Plaintiff would miss more than three days of work per month in the period prior to April 8, 2018 is not supported by substantial evidence. Dkt. 23 at 4-5. The Court agrees with Plaintiff.

The ALJ "was required to support his finding regarding Plaintiff's disability onset date with substantial evidence." *Polavaa N. v. Saul*, No. 19-cv-06366-JSC, 2021 WL 1118074, at *5 (N.D. Cal. Mar. 24, 2021). Here, the ALJ did not directly explain why he selected April 8, 2018 as the onset date, although he noted that Plaintiff was involved in a motor vehicle accident on that date. AR 27. The applicable regulations concerning determination of an established onset date distinguish between impairments that result from a traumatic event (such as an automobile accident) and non-traumatic impairments (including static impairments and impairments that are expected to improve or worsen over time). SSR 18-01p. Here, the ALJ found that Plaintiff had various severe impairments before the onset date he selected. AR 18. In this situation, where Plaintiff has both a traumatic impairment (the motor vehicle accident) and a non-traumatic impairment (her CRPS, anxiety disorder, PCOS, and fibromyalgia (*id.*)), the ALJ must "consider all of the impairments in combination when determining when the claimant first met the statutory definition of disability." SSR 18-01p § I(B)(3). The ALJ must "consider all evidence of record when we determine whether a claimant meets the statutory definition of disability." SSR 18-01p § I(B). The ALJ may, but is not required to, call on the services of a medical examiner if the ALJ needs to infer the date that the claimant first met the statutory definition of disability. SSR 18-01p § I(B)(2).

The ALJ's different treatment of Dr. Cohen's opinion before and after April 8, 2018 is not supported by the record. For the period before April 8, 2018, the ALJ stated with respect to

1   Dr. Cohen's opinion that "for these same reasons, the limitation to being absent from work more
2   than three times per month is inconsistent with the record."  AR 25.  The "reasons" to which the
3   ALJ referred appear to be those articulated in the previous sentence, in which the ALJ credited
4   "the state agency reviewing physicians."  *Id.*  In the preceding paragraph, the ALJ discussed the
5   opinions of two state agency reviewing physicians, G. Lee, M.D. and Nancy Childs, M.D.  *Id.*
6   Dr. Lee and Dr. Childs both found Plaintiff capable of light activity and did not mention how often
7   she would be absent from work.  *See* AR 101, AR 137.  However, the dates of these two state
8   agency reviewing physicians' evaluations fall on either side of the April 8, 2018 onset date
9   identified by the ALJ:  Dr. Lee's opinion is from February 2018, and Dr. Childs' opinion is from
10  June 2018.  *Id.*; *see also* AR 25.  Dr. Childs' review included both Dr. Cohen's April 4, 2018
11  opinion and records from Plaintiff's April 8, 2018 motor vehicle accident.  *See* AR 133, AR 136-
12  137, AR 139-140.  The two state agency reviewing physicians do not distinguish between
13  Plaintiff's condition before and after the April 8, 2018 onset date and thus do not support the
14  ALJ's decision in that respect.

15  Relatedly, the ALJ failed to explain why Dr. Cohen's opinion that Plaintiff would miss
16  work more than 3 times per month became fully persuasive as of April 8, 2018.  AR 28.  In this
17  portion of his decision, the ALJ discussed Dr. Cohen's examination on April 4, 2018, then stated
18  that Plaintiff was involved in a motor vehicle accident on April 8, 2018.  AR 27.  As discussed
19  above, the ALJ evidently viewed this accident as the turning point after which he finds
20  Dr. Cohen's "entire opinion persuasive."  AR 28.  The ALJ noted that the medical evidence on and
21  after April 8, 2018 showed "tenderness, some tremors, and reduced grip strength."  *Id.*  Yet the
22  ALJ's RFC as of April 8, 2018 did not incorporate any changes to Plaintiff's exertional, postural,
23  manipulative, or other such limitations not already contained in his pre-April 8, 2018 RFC; the
24  only change to Plaintiff's RFC was that from this date on the ALJ found that she would be absent
25  from work three times per month.  *Compare* AR 21, *with* AR 26-27.  Elsewhere in this portion of
26  his decision, the ALJ noted that the February and June 2018 evaluations by the state agency
27  reviewing physicians Dr. Lee and Dr. Childs (which, as discussed above, he finds "persuasive" for
28  the earlier period) are "unpersuasive for this [April 8, 2018 and later] period" because they were

"not restrictive enough." AR 28. He stated that "Dr. Childs and Dr. Lee did not have access to the evidence during this period, which indicates that the claimant became substantially more limited." *Id.* However, this reasoning is flawed because the record shows that Dr. Childs considered Dr. Cohen's April 2018 opinion, as well as the fact of her motor vehicle accident and records from later in the spring of 2018. *See* AR 120-124, AR 137.

The ALJ gave Dr. Cohen's opinion full weight as of April 8, 2018 but only partial weight before that date. As explained above, his reasons for drawing this distinction fall short. In sum, the ALJ failed to explain how Plaintiff's motor vehicle accident, which appears to be the turning point that occurred on April 8, 2018, would affect the frequency of her absences from work. As a result of his errors in evaluating the medical evidence, the ALJ failed to support his finding regarding the disability onset date with substantial evidence.

### b. Dr. Lo

Plaintiff also challenges the ALJ's analysis of the opinion of Plaintiff's treating physician, Dr. Lo. Dkt. 23 at 5-6. Dr. Lo, who had treated Plaintiff since December 2012, opined in June 2018 that Plaintiff would be absent from work more than three times per month during the period prior to April 8, 2018. AR 1171. As he did with Dr. Cohen's April 2018 opinion that Plaintiff would miss three days of work per month, the ALJ found Dr. Lo's opinion on this issue "unpersuasive" because it is "inconsistent with the record for the reasons discussed regarding the state agency reviewing physicians." AR 25.[2] Thus, the ALJ compounded his error in evaluating Dr. Cohen's opinion as to the pre-April 8, 2018 period by also discounting Dr. Lo's corresponding opinion for the same insufficient reasons.

### c. Mental health care providers

Plaintiff challenges the ALJ's rejection of the opinions of mental health care providers Dr. Catlin, Dr. Kennedy, and Dr. Wilkin. Dkt. 23 at 6-9. The Commissioner's cross-motion explains that all of these opinions postdated the April 2018 onset date selected by the ALJ and

---

[2] Unlike his treatment of Dr. Cohen's opinion, the ALJ did not address whether he gave Dr. Lo's opinion that Plaintiff would miss three days a month of work more weight in the period beginning on April 8, 2018 than he did in the preceding period.

8

argues that the ALJ was therefore reasonable in concluding that these opinions were not persuasive for the earlier time period. Dkt. 26 at 14-16. Plaintiff does not address the Commissioner's position on this issue in her reply. *See* Dkt. 27. In light of this posture and the Court's finding that the ALJ erred in evaluating the opinions of Dr. Cohen and Dr. Lo, the Court does not reach Plaintiff's arguments regarding the opinions of Plaintiff's mental health care providers.

### d. Conclusion on evaluation of the medical evidence

For the reasons discussed above, on the issue of the ALJ's evaluation of the medical evidence, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion.

### B. Issue Two: Plaintiff's Credibility

Where, as here, the ALJ made no finding of malingering, a reviewing court must determine whether the ALJ identified specific, clear and convincing reasons for his conclusion regarding Plaintiff's credibility. *Brown-Hunter,* 806 F.3d at 488-89. "This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and … explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff testified that she experiences pain so severe that it intermittently prevents her from performing various normal daily activities. *See* AR 48-82. She testified that she experiences muscle pain, fatigue, difficulty thinking, headache, cyclic vomiting, and loss of appetite. *Id.* She also testified that if she pushes through the pain it gets worse, and that her pain increases with prolonged sitting. *Id.* She testified that she has feelings that she is hopeless or worthless, difficulty with memory and concentration, and difficulty handling stress. *Id.*

The ALJ found that "beginning on April 8, 2018, the claimant's allegations regarding her symptoms and limitations are consistent with the evidence." AR 27. However, Plaintiff challenges the ALJ's assessment of her credibility for the earlier period. *See* Dkt. 23 at 9-11. With respect to that time period, the ALJ concluded as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because of the lack of significant and consistent

> exam finding during this period, the claimant's improvement with treatment, the claimant's activities, and the lack of consistent observations of the claimant in distress.
>
> Regarding the claimant's physical impairments, while the record supports determining that they have resulted in some limitation to the claimant's functioning, it does not demonstrate the level of abnormality one would expect for an individual limited to the levels alleged. The objective findings during this period fail to provide strong support for the full extent of the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional capacity statement above.

AR 22.

It is evident from the ALJ's decision that his credibility determination was tied to his evaluation of the medical evidence, which the Court has concluded was erroneous. Accordingly, on the issue of the ALJ's determination of Plaintiff's credibility, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion.

**C.    Issue Three:  Lay Witness Statements**

Plaintiff argues that the ALJ failed to consider or address the statements of two lay witnesses, Fuji Dreskin and Eli Scislowicz. Dkt. 23 at 11-12. Ms. Dreskin, a friend and former co-worker of Plaintiff, stated that she has observed Plaintiff in "debilitating pain" and that due to Plaintiff's pain and other symptoms, "it became almost impossible for us to go out together and do typical activities." AR 349. Mr. Scisolowicz, who had known Plaintiff for 14 years and lived with her for 10 years, explained how Plaintiff's pain became progressively worse and increasingly interfered with her activities. AR 350.

The list of exhibits attached to the ALJ Decision indicate that correspondence from Ms. Dreskin and Mr. Scislowicsz were part of the record before the ALJ. AR 35. However, the ALJ Decision did not address these witnesses' statements other than the following sentence:

> While the claimant does have some deficits and her friends described some difficulties in their letters (16E-17E), the record as a whole, especially considering the lack of consistent and significant exam findings, the lack of observations of the claimant in distress, and the claimant's improvement in functioning with medication, is inconsistent with the claimant's rather extreme allegations and supports that she can perform the residual functional capacity above.

AR 24.

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent

evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make." *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Id.* (citations and internal quotation marks omitted).

The Commissioner argues that "[t]hough the ALJ must 'consider' such statements, there is no requirement under the new regulations for the ALJ to explicitly evaluate lay witness statements." Dkt. 26 at 19. The Commissioner also states that "[t]he Ninth Circuit has held under the prior regulations that the ALJ need only provide a 'germane' reason to discount a lay witness statement" and argues that "[t]o the extent this precedent controls," the ALJ has done so here. *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

A court in this District has explained that "the Ninth Circuit's 'germane' reasons requirement for evaluating lay witness testimony has always been a different (and lower) standard than that required for evaluating medical opinions" and therefore the germane reasons standard still applies because "[t]he new regulations providing that lay opinions do not need to be evaluated under the same standards as medical opinions is therefore consistent with the Ninth Circuit's germane reasons standard." *Alice B. v. Kijakazi,* No. 20-cv-05897-DMR, 2021 WL 6113000, at *8 (N.D. Cal. Dec. 27, 2021). The Court need not resolve any latent disagreement on this point in this case because the Commissioner has briefed this case under the assumption that the germane reasons case law continues to apply. *See* Dkt. 26 at 19-20; *see also K.F. v. Kijakazi*, No. 20-cv-08629-LB, 2022 WL 207661, at *8 (N.D Cal. Jan. 24, 2022).

Under the "germane reasons" standard, an ALJ is not required to "discuss every witness's statement on a[n] individualized, witness-by-witness basis" and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

11

similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012).

Here, the ALJ's discussion of the lay witness statements was so minimal that it did not establish that their testimony was "similar to" Plaintiff's own testimony such that it may be rejected for the same reasons. In any event, as discussed above, the ALJ erred in evaluating Plaintiff's credibility and he did not offer any other germane reasons for rejecting the statements of Ms. Dreskin and Mr. Scislowicsz. Accordingly, on this issue, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion.

### D. Issue Four: Determination of Plaintiff's Residual Functional Capacity and Ability to Perform Other Work Prior to April 8, 2018

"At steps four and five, the ALJ determines a claimant's residual functional capacity," which is "what one can still do despite one's limitations." *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014); 20 C.F.R. § 404.1520(e). The ALJ determines RFC "based on all the relevant medical and other evidence" in the record and "must consider a claimant's physical and mental abilities" and "the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain." *Garrison*, 759 F.3d at 1011.

As discussed above, the ALJ appeared to select the onset date of April 8, 2018 based on his determination that as of that date, Plaintiff would miss three days of work per month. *Compare* AR 21 (RFC prior to April 8, 2018, based on being absent one day per month), *with* AR 26-27 (RFC from April 8, 2018 on, based on being absent three days per month). This distinction is supported by the testimony of the vocational expert at the hearing that there would be no jobs in the national economy that could be performed by an individual with Plaintiff's age, education, work experience, and RFC who is absent two times per month. AR 87-88; *see also* AR 30 ("The vocational expert testified that given all of these factors [including two absences a month], there are no jobs in the national economy that the individual could perform [and] [t]herefore, there are no jobs in the national economy that the individual could perform if the individual was absent three times per month").

Plaintiff asserts that had the ALJ not erred in rejecting the medical opinion evidence, Plaintiff's testimony, and third-party witness statements — and in particular the opinions of

12

Drs. Lo and Cohen that Plaintiff would miss more than three days of work per month — he would have assessed that Plaintiff had a more limited RFC prior to April 8, 2018. Dkt. 23 at 12. As explained above, the ALJ erred in evaluating these categories of evidence.

Accordingly, on the issue of the ALJ's determination of Plaintiff's RFC for the period before April 8, 2018, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion.

## V. CONCLUSION AND DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the issues discussed above based on applicable law and the guidance provided in this opinion. It is not the Court's intent to limit the scope of the remand.

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: March 30, 2022

SUSAN VAN KEULEN
United States Magistrate Judge